**SIGNED THIS: October 21, 2010**

_____
**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | In Bankruptcy |
| WILLIAM E. WALKER and | ) | |
| PHYLLIS A. WALKER, | ) | Case No. 07-70358 |
| | ) | |
| Debtors. | ) | |

## O P I N I O N

Before the Court is the Debtors' Motion to Modify their confirmed Amended Chapter 13 Plan.  John H. Germeraad, the Chapter 13 Trustee ("Trustee"), has objected to the Motion to Modify.  One of the Debtors recently received proceeds from the settlement of a personal injury lawsuit.  The issue before the Court is whether all or some portion of the lawsuit proceeds, which the Debtors had not previously disclosed or claimed as exempt, should be paid to the Trustee for distribution to creditors.  For the reasons set forth

herein, the Debtors' Motion to Modify will be granted in part and denied in part. The Debtors will be ordered to turn over all net proceeds after payment of expenses and a newly claimed exemption to the Trustee for distribution to creditors.

## I. Factual and Procedural Background

William E. Walker and Phyllis A. Walker ("Debtors") filed their voluntary petition under Chapter 13 of the Bankruptcy Code on February 28, 2007. Their Amended Chapter 13 Plan ("Plan") was filed on May 16, 2007, and confirmed without objection on June 21, 2007. The Plan provided that the Debtors would pay to the Trustee $314 for one month and $384 for 59 months for a total of $22,970 over the 60-month term of the Plan. The Plan also provided that, from those funds, the Trustee would make disbursements to himself for his own fees and commissions, to the Debtors' attorneys for fees, to two mortgage lenders for arrearages on the Debtors' home mortgages, and to two other lenders for the payment of auto loans. The Plan proposed that the Debtors would continue to make their ongoing first and second mortgage payments on their home directly. Finally, the Plan provided that any funds remaining after the payment of all of the other specified obligations would be distributed *pro rata* to unsecured creditors but also projected that there would not, in fact, be any such funds remaining.

On April 8, 2009, the Debtors filed an Application to Employ

seeking authority to employ Attorney Mark Wells as counsel for Mrs. Walker with respect to a personal injury lawsuit.  The documents attached to the Application to Employ disclose that Mrs. Walker's injury occurred in July 2005 and that Mr. Wells had originally been employed by Mrs. Walker to pursue her personal injury case in July 2006.  No explanation was provided in the Application to Employ as to why the personal injury cause of action and Mr. Wells' employment had not been previously disclosed.  On June 12, 2009, after giving notice and an opportunity to be heard to all interested parties and receiving no objection, an order was entered allowing the Application to Employ Attorney Wells.

On October 19, 2009, the Trustee filed a Motion to Dismiss alleging that the Debtors had failed to make their payments required by the Plan.  In response, the Debtors admitted their default but sought an opportunity to cure.  After several hearings on the Trustee's Motion to Dismiss, the Debtors filed a Motion to Modify their confirmed Plan.  In their Motion to Modify, Debtors sought to cure their default by increasing their Plan payments to $430 per month for the remaining term of the Plan.  The Trustee responded to the Motion to Modify by raising the issue of whether Mrs. Walker's pending personal injury action was an asset of the estate.  After hearing, an order was entered on March 30, 2010, granting the Motion to Modify to increase the monthly Plan payments to $430 but reserving the issue of how the proceeds, if any, from

-3-

the pending personal injury case would be treated.

On June 16, 2010, Debtors filed the instant Motion to Modify. The Motion to Modify reports that the personal injury case has been settled for $45,000. The Motion to Modify suggests that, pursuant to a separately-filed Application for Compensation, the Debtors expect that $15,000 of the settlement proceeds will be paid to Attorney Wells for fees and an additional $2986.07 will be disbursed for expenses related to the personal injury case. Further, the Debtors assert that Mrs. Walker is entitled to a $15,000 exemption in the settlement funds. Debtors claim that, after all expected disbursements and exemptions are paid, $12,013.93 will remain, and they propose that such sum be paid over to the Trustee. The Motion to Modify also contains the following provision:

> The original base amount to be paid into the plan is $22,970.00. To date the Debtor [sic] has paid $13,517.00 into the plan, and after the trustee receives the proposed payment of $12,013.93, the total amount paid into the plan will be $25,530.93, which is $2,560.93 more than the original base amount of the plan and will result in $2,304.00 being available to pay allowed general unsecured claims or 9.3% of the total general unsecured claims filed.

Motion to Modify *at* p. 1.

The Motion to Modify concludes with a prayer for relief which asks only that the "base" amount of the Plan be increased to $25,530.93.

In response to the Motion to Modify, the Trustee filed a document labeled "Trustee's Review and Partial Objection to Motion

-4-

to Modify Chapter 13 Plan" ("Trustee's Objection").  The Trustee
asserts that "a personal injury recovery in a Chapter 13 case is
considered disposable income."    The Trustee suggests that
"normally" a debtor receiving a personal injury settlement would
claim some part of the settlement for "reasonable living expenses"
and complains that, here, the Debtors did not do that but, instead,
assert that $15,000 of the settlement is exempt even though no
amended Schedule C actually claiming the exemption has ever been
filed.  The Trustee argues that, when funds from a personal injury
settlement come into a Chapter 13 estate, such funds should be used
to pay unsecured creditors.  The Trustee concludes his comments by
suggesting that the "base" amount of the Plan should be increased
to a sum "between $25,767.93 and $27,259.96" rather than the
$25,530.93 amount proposed by the Debtors.

At a hearing held on the Motion to Modify on July 27, 2010,
this Court questioned the Trustee on whether personal injury
settlement proceeds should be analyzed for Chapter 13 purposes as
disposable income or whether such funds might more properly be
subjected to a liquidation analysis.[1]  The Court also questioned the

---

[1]

In order for a Chapter 13 plan to be confirmed or a
modification of a confirmed plan to be allowed, a court must
determine that unsecured creditors are receiving at least as much
through the plan or the plan as modified as such creditors would
receive if the estate were liquidated under Chapter 7.  *See* 11
U.S.C. §1325(a)(4).   It is the analysis required to make that
determination that this Court will refer to throughout this Opinion
as a "liquidation analysis."

Debtors' attorney about how the $15,000 exemption claim could be considered when such exemption had never actually been claimed on a Schedule C.  The hearing was continued to August 10, 2010, with both the Trustee and Debtors' counsel urged to review the pending matters and to revise or supplement the documents previously filed.

On July 29, 2010, the Trustee filed a brief in support of his position that personal injury settlement proceeds must be analyzed in Chapter 13 cases as disposable income.  The brief cited several cases for the proposition that exempt income may be considered in calculating disposable income.  The brief does not, however, explain why a liquidation analysis is not also an appropriate way to consider the settlement proceeds.  Further, the brief does not discuss the apparent conflict between the Trustee's stated position that the settlement proceeds constitute disposable income which should be used to pay unsecured creditors, and his also stated agreement with the Debtors' proposal that the bulk of the settlement proceeds be used to pay secured rather than unsecured debt.

On August 4, 2010, the Debtors filed a Motion to Approve Settlement.  The Motion to Approve was filed in response to the Trustee's suggestion that a Motion to Modify was not the appropriate vehicle to obtain approval of the settlement.

Further hearing was held on August 10, 2010, on the Motion to Modify.  At that time, the Court again asked why unsecured

-6-

creditors were not entitled to receive from the personal injury settlement proceeds as least as much as they would receive if a liquidation had occurred under Chapter 7.  The Court also inquired again as to any basis for considering an exemption which has never actually been claimed.  The Trustee and the Debtors were given an additional 14 days to file briefs in support of their respective positions.

On August 20, 2010, the Trustee filed a document labeled as a memorandum but which contains no citation to any legal authority. The document consisted mainly of mathematical calculations showing that, if the personal injury proceeds are reviewed under a liquidation analysis theory, unsecured creditors will receive significantly more than they would receive under the Trustee's proposed disposable income analysis.

On August 24, 2010, the Debtors filed Amended Schedules B and C scheduling the personal injury settlement proceeds and claiming a $15,000 exemption in the proceeds on behalf of Mrs. Walker.  The Debtors did not file a brief in support of their Motion to Modify.

This Court has now entered orders approving settlement of the personal injury case for $45,000 and awarding Attorney Wells his requested fees and expense reimbursement.  In an Order entered September 8, 2010, Attorney Wells was ordered to retain the $27,013.93 balance of the settlement proceeds in his trust account pending further order of this Court.

## II. Legal Analysis

The Motion to Modify raises issues relating to how a Chapter 13 plan may properly be modified, whether a liquidation analysis must be made both at the time of original confirmation and at the time of plan modification, and whether the provisions of §1325(b) regarding disposable income apply to plan modifications. Each issue will be discussed separately.

This Court has jurisdiction to decide the issues before it. 28 U.S.C. §1334. This is a core proceeding. 28 U.S.C. §157(b)(2)(A), (B), and (L).

## A. The Debtors' Motion to Modify Does Not Comply with the Requirements of §1329

Modification of a confirmed Chapter 13 plan is governed by the provisions of §1329. 11 U.S.C. §1329. Modifications may be made at any time before the completion of plan payments, and modifications may be proposed by a debtor, the trustee, or the holder of an allowed unsecured claim. Confirmed plans may be modified to increase or reduce the amount of payments on claims of a particular class or to extend or reduce the time for such payments or for the other reasons set forth in the statute. The purposes for modification of a confirmed plan set forth in §1329 constitute an exclusive list. Therefore, motions to modify which comply with §1329 are limited to those which seek modification of

-8-

a confirmed plan for one of the purposes enumerated in the statute. *Id.*; *In re Matter of Witkowski*, 16 F.3d 739, 745 (7th Cir. 1994); *In re Plummer*, 378 B.R. 569, 574 (Bankr. C.D. Ill. 2007).

Debtors' Motion to Modify does not specifically seek modification of the Plan for any of the purposes set forth in §1329. Instead, the specific relief requested is an increase in the "base" of the Plan. The Motion to Modify suggests that a result of changing the "base" will be that some additional funds may be available for unsecured creditors but does not even mention the other probable result of the proposed modification which is a change in the timing of payments to secured creditors. Likewise, the Trustee's Objection focuses on changing the "base" of the Plan without discussing how such a change will impact the amount or timing of payments to creditors.

The "base" of a plan, as this Court understands the term used by the Debtors and Trustee, is the aggregate amount of money that a debtor must pay into a plan in order for a trustee to be able to make all of the payments to creditors called for by the plan. Once a plan is proposed, the amounts necessary to pay all creditors provided for by that plan can be calculated. To that amount, an estimated trustee fee is added to determine the total amount necessary to make all plan disbursements. That sum must then be compared with the amount that a debtor is actually proposing to pay into the plan through periodic payments over the term of the plan.

-9-

In order to be confirmed, a plan must provide for the submission of sufficient income of a debtor to the trustee for execution of the plan.  11 U.S.C. §1322(a)(1).  Only if a debtor is proposing to pay to the trustee an aggregate amount which at least equals the aggregate amount the trustee is expected to pay out in execution of the plan can the plan be confirmed.   The same calculation must be made when a plan is modified to ensure that sufficient income will be paid in so that all payments proposed under a modified plan can be made by the trustee.   11 U.S.C. §1329(b)(1);  11 U.S.C. §1322(a)(1).

Although calculating the "base" of a plan is important to determine the feasibility of a plan, it is not a calculation that has independent legal significance.  Because a calculation of the total amount of money needed to fund a plan can only be made after determining what must be paid to each class of creditors provided for by the plan, a proposal to raise or lower that total amount is meaningless without an accompanying proposal to raise or lower the payments to some or all of the classes of creditors.  Further, a proposal to modify a plan simply by raising or lowering the "base" of the plan does not comply with §1329 because it is not a proposal to modify the plan for one of limited purposes set forth in the statute.

Here, the Motion to Modify proposes to pay into the Plan $12,013.93 from the personal injury settlement.  The Motion to

Modify does not, however, specifically propose how that money is to be distributed by the Trustee. Instead, the Motion to Modify says that, by making the payment, the "base" of the Plan will be increased from $22,970.00 to $25,530.93. Mathematically, that only adds up if all of the remaining $430 monthly payments required by this Court's March 30, 2010, Order described above are forgiven. However, the Motion to Modify does not specifically request that relief.

Further, the Motion to Modify suggests that one result of the change in the Plan "base" is that $2304 "will be available to pay allowed general unsecured claims." The Motion to Modify does not specifically request an increase in payments in that or any other amount to unsecured creditors. Debtors are apparently relying on the nebulous language in the original Plan which provides that anything left over will go to unsecured creditors. The precise mathematical calculation of the $2304 is not set forth in the Motion to Modify and the number is, at best, questionable. It appears that the Debtors simply assumed that the difference between the original "base" and the new proposed "base" of $2560.93 will all be used to pay unsecured creditors and the Trustee's fees associated with such payments. The $2304 represents that gross difference minus a trustee's fee of approximately 10%.

There are problems, however, with the Debtors' assumptions. The Plan has already been modified once due to missed payments.

-11-

Because the Plan provides for payments on auto loans which include simple interest, missed payments result in more interest having to be paid to secured creditors and thus a higher total or "base" amount being needed to pay secured claims.  When the Plan was modified in March 2010, a new higher "base" would have been established even though it was not specifically set forth in the documents filed by either party.  Further, the Trustee reported in his August 20th memorandum that the Debtors have not made a Plan payment since May 2010.  Thus, additional interest has accrued, raising the pay-off amount for secured creditors entitled to interest.  Finally, implicit in the proposed modification is an early payoff of the auto loans which should actually reduce the total interest to be paid on those loans.  The Debtors' assumption in their Motion to Modify that the amount required to pay secured creditors still remains the same as originally proposed in May 2007 despite their defaults in 2009, their failure to make payments for the last four months, and their proposal to pay off the loans early cannot be correct.  Debtors' mathematical calculations take none of these factors into consideration, and their calculations are just too simplistic to be reliable.

Debtors' faulty assumptions aside, the Motion to Modify does not comply with §1329.  It is inappropriate to describe a proposed plan modification only in terms of a change in a plan "base."  Such a proposal does not provide fair notice of proposed changes to

affected creditors.  No one should be required to guess - and no one is entitled to guess - as to what a proposed plan modification means.  Neither a debtor nor a trustee may assume that, by granting a motion to modify, this Court is granting not only the relief specifically requested, but is also implicitly granting all other relief which should have been requested to fully effectuate a debtor's actual but unstated intent.

As will be explained in further detail below, this Court will grant the Motion to Modify in part despite its defects.  These matters have dragged on too long, and there is no reason to think that Debtors will file more complete or appropriate documents if given another chance to do so.  The Debtors have proposed to pay into the Plan the net proceeds of the settlement and that will be allowed.  For the reasons to be explained below, the Debtors suggested distribution of the funds will be denied as proposed but allowed as modified to comply with the requirements of the Code.

**B. The Debtors Must Pay their Unsecured Creditors the Amount Required by a Chapter 7 Liquidation Analysis**

In order to obtain confirmation of a Chapter 13 plan, a debtor must provide that unsecured creditors will receive at least as much through plan disbursements as they would receive under a Chapter 7 liquidation of the debtor's assets.  Specifically, §1325(a)(4) provides:

-13-

(a) Except as provided in subsection (b), the court shall confirm a plan if –

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

11 U.S.C. §1325(a)(4).

Generally, a Chapter 13 debtor establishes that this condition for confirmation has been met by providing a hypothetical liquidation analysis. Such an analysis first requires a determination of the value of all of a debtor's non-exempt property. That value is then reduced by (1) the estimated administrative expenses of a Chapter 7 case including costs of selling or liquidating the non-exempt property; (2) the amount of any lien claims against the non-exempt property; and (3) the amount of priority claims that would have been allowed and paid before any distribution to unsecured creditors in the Chapter 7 case. What remains is the amount that must be paid to unsecured creditors through a Chapter 13 plan to meet the requirements of §1325(a)(4). See *In re Sharp*, 394 B.R. 207, 212 (Bankr. C.D. Ill. 2008); *In re Trombetta*, 383 B.R. 918, 924 (Bankr. S.D. Ill. 2008).

When the non-exempt property of a debtor consists of real estate, vehicles, or other similar assets, the value of the assets for purposes of completing the liquidation analysis can generally be determined by appraisal or reference to recognized tables and

-14-

guides.  However, when the property is an unliquidated, contingent claim such as the personal injury cause of action here, determining value for the hypothetical analysis is much more difficult. Chapter 7 trustees do, on occasion, make business judgments about the value of such unliquidated, contingent claims and sell the claims to avoid both the risk of an adverse result and the costs of delay.  In many cases, however, Chapter 7 trustees simply keep a bankruptcy case open and wait for the claim to be liquidated.   In trying to mimic a Chapter 7 result, therefore, Chapter 13 debtors usually propose to meet the Chapter 7 liquidation test by paying in the proceeds - or, more accurately, the net proceeds - of unliquidated, contingent claims after such claims are resolved by trial or settlement.

Here, the Debtors initially failed to disclose the personal injury claim and, therefore, made no proposal in their Plan for the treatment of any net proceeds and provided no dividend to unsecured creditors based on what such creditors would have received in a Chapter 7 case.  The pending personal injury case should have been disclosed, and the Plan should not have been confirmed without including some provision to bring the Plan into compliance with §1325(a)(4).

Debtors' tardy disclosure of the personal injury cause of action does not relieve the Debtors of their obligation to treat their unsecured creditors as required by §1325(a)(4).   A

-15-

liquidation analysis is required not only when a plan is initially confirmed, but also at the time of any post-confirmation modification.   11 U.S.C. §1329(b)(1); 11 U.S.C. §1325(a)(4). Although both the Debtors and the Trustee seem to agree that no liquidation analysis is now required, neither has cited any authority in support of forgoing the analysis.  The law is clear. A liquidation analysis was required and should have been done at the time of confirmation.  A liquidation analysis is required now in order to properly consider the pending Motion to Modify.

Valuation of the personal injury claim was made by approval of the $45,000 settlement.  Attorney's fees and expenses have been approved in the amount of $17,986.07, leaving a balance which is currently held by Attorney Wells of $27,013.93.  Mrs. Walker now claims an exemption of $15,000, and it must be determined whether that exemption should be allowed.  Thereafter, the Court must attempt to calculate the amount that unsecured creditors would likely have received if this case had been liquidated under Chapter 7.

Mrs. Walker claims her exemption under Illinois law in the amount of $15,000.    735 ILCS 5/12-1001(h)(4).[2]  Mrs. Walker's Amended Schedule C was filed on August 24, 2010, and notice of the

---

[2]
  Illinois law applies because the Illinois legislature has mandated that Illinois residents may claim only Illinois exemptions in bankruptcy cases.  *See* 735 ILCS 5/12-1201.

newly claimed exemption was sent to all creditors and parties in interest.   Objections to amended exemption claims must be filed within 30 days after the filing of the amended exemption claim. Fed.R.Bankr.P. 4003(b)(1).   That deadline has now passed, and no objections have been filed.   Thus, although Mrs. Walker's initial failure to disclose the personal injury cause of action and her initial failure to claim any portion of potential proceeds as exempt remain extremely troubling, she has now taken all necessary steps to properly claim the exemption.   Accordingly, Mrs. Walker will be allowed the $15,000 exemption.

After deducting the $15,000 exemption, $12,013.93 remains. The Debtors have proposed to pay that amount to the Trustee for distribution to creditors.   The Debtors also propose that $2304 of that amount will be available to pay unsecured claims.   The proposed $2304 does not, however, satisfy the Debtors' obligation under a liquidation analysis.

In his August 20th memorandum, the Trustee calculated that, if a Chapter 7 trustee collected a total of $12,013.93, Chapter 7 trustee fees would be $1951.39, leaving a balance of $10,062.54 for distribution to unsecured creditors.   *See* 11 U.S.C. §326(a).[3]   The Debtors submitted no calculation of their own and did not respond

---

[3]

Per §326(a), a Chapter 7 trustee's compensation on $12,013.93 would be calculated at the rate of 25% of the first $5000 disbursed and 10% on the balance.

to the Trustee's calculation.  Apparently, they do not dispute that unsecured creditors would have received $10,062.54 if their estates had been liquidated under Chapter 7.  Thus, this Court will find that unsecured creditors in this Chapter 13 case are entitled to a distribution of $10,062.54.  To the extent the Motion to Modify proposes a lower payment for unsecured creditors, it will be denied.  An order will be entered requiring $10,062.54 of the settlement proceeds to be distributed in payment of allowed unsecured claims.

## C. A Projected Disposable Income Analysis is Not Required to Resolve the Motion to Modify

The Trustee maintained throughout the Court's consideration of the Motion to Modify that the only way to properly consider the settlement proceeds was to treat them as additional disposable income.  Nevertheless, the Trustee provided no actual disposable income calculation to support his Objection to the Motion to Modify.  Further, he failed to explain how his insistence that all net settlement proceeds, including the amounts claimed as exempt, must be considered disposable income can be reconciled with his agreement with the Debtors' proposal that the bulk of the proceeds be used to pay secured claims.  Finally, and most importantly, the Trustee failed to provide legal authority for requiring a disposable income analysis with respect to the personal injury

-18-

settlement proceeds at issue here.

As discussed above, in order to obtain initial confirmation of a Chapter 13 plan, a debtor must propose to pay unsecured creditors the amount required by the liquidation analysis.  If the trustee or an unsecured creditor objects, the debtor is then also required to either propose to pay all allowed unsecured claims in full or commit all projected disposable income to plan payments for unsecured creditors during the plan's applicable commitment period. 11 U.S.C. §1325(b).  However, a debtor is not required to pay to unsecured creditors both the liquidation analysis amount and the disposable income amount.  Rather, a debtor is required to pay the higher of the two amounts.  A debtor whose disposable income payments exceed the liquidation analysis amount satisfies the liquidation analysis by making the disposable income payments. Likewise, a debtor who has limited or no disposable income must still pay into the plan for distribution to unsecured creditors the amount those creditors would receive in a Chapter 7 liquidation.

Here, the Debtors estimate that their proposed Plan modification would yield $2304 for unsecured creditors.  In his Objection, the Trustee suggests that the "base" of the Plan should be increased by a range of $237 to $1729 more than the Debtors' proposal.  Thus, the Trustee's proposal is, at best, one that would yield no more than $4000 for the payment of unsecured claims. Because the liquidation analysis amount discussed above is in

excess of $10,000, the Debtors must pay that amount to unsecured creditors, and the disposable income analysis of the Trustee adds nothing.

Further, the Trustee's calculation of what should be distributed to unsecured creditors from the settlement proceeds does not resemble an actual disposable income calculation. Disposable income is "current monthly income" less reasonable and necessary expenses.  11 U.S.C. §1325(b)(2).  Projected disposable income is monthly disposable income multiplied by the number of months in the applicable commitment period and adjusted by changes in income or expenses which are known at the time of confirmation or are virtually certain to occur during the term of the plan.  See *Hamilton v. Lanning*, 560 U.S. ___, 130 S.Ct. 2464, 2478, 177 L.Ed.2d 23 (2010).  Although the Trustee vigorously asserts that all of the net proceeds of the settlement after payment of fees and costs are disposable income, he provides no disposable income calculation that is in any way supported by statutory or case law. Instead, he asserts that the Debtors should pay in either the $12,013.93 that they proposed, which assumes allowance of the $15,000 exemption, or they should pay in $13,506.96 which he says would be one-half of the settlement proceeds after expenses. The Trustee also agrees with the Debtors that the amount paid in from the settlement should be added to the amount already paid in to create a new "base" which, as explained above, would yield an

amount only in the $4000 range to be paid to unsecured creditors. However, the Trustee provides no explanation of how his proposed payment of $4000 to unsecured creditors bears any relationship to a disposable income calculation.

The larger issue is whether the disposable income provisions of §1325(b) even apply to plan modifications. Section 1329 specifically references the applicability of §1322(a), §1322(b), §1323(c), and §1325(a) to plan modifications. *See* 11 U.S.C. §1329(b)(1). Because §1325(b) is not explicitly mentioned as being applicable, many courts hold that it does not apply to plan modifications. See, e.g., *In re Wetzel*, 381 B.R. 247, 251-52 (Bankr. E.D. Wis. 2008); *In re Young*, 370 B.R. 799, 802 (Bankr. E.D. Wis. 2007); *In re Forte*, 341 B.R. 859, 864 (Bankr. N.D. Ill. 2005); *In re Golek*, 308 B.R. 332, 336-37 (Bankr. N.D. Ill. 2004).

Since the adoption of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the reasons why §1325(b) should not apply to §1329 modifications have become more evident. Under BAPCPA, projected disposable income is based on a debtor's "current monthly income" which is generally calculated by using a debtor's actual income during the six calendar months prior to filing. 11 U.S.C. §1325(b)(2); 11 U.S.C. §101(10A). The income from that period is only modified by changes which are known at the time of confirmation or virtually certain to occur during the term of the plan. See *Hamilton v. Lanning*, 130 S.Ct. at 2478. Because

the current definition of projected disposable income results in a calculation that is, in large part, fixed by pre-petition circumstances, reviewing that calculation at the time of a post-confirmation modification may not be particularly meaningful. Because of its statutory definition, "current monthly income" once correctly calculated should not change over time. Thus, attempting to apply §1325(b) to a §1329 modification is not favored by post-BAPCPA cases. See, e.g., *In re McCully*, 398 B.R. 590, 593 (Bankr. N.D. Ohio 2008); *In re White,* 411 B.R. 268, 272-73 (Bankr. W.D. N.C. 2008); *In re Ewers*, 366 B.R. 139, 142 (Bankr. D. Nev. 2007).

This is not to say that changes in circumstances related to income and expenses cannot be considered when reviewing proposed modifications. It is to say that, because the plain language of §1329 does not include §1325(b), plan modifications are not analyzed under a disposable income test. See *Wetzel*, 381 B.R. at 252.

The Trustee's position that the lawsuit proceeds must be treated as disposable income is rejected as a matter of both law and fact. The disposable income provisions of §1325(b) do not apply to plan modifications.[4] Further, even if those provisions

---

[4]    In making his argument that the personal injury proceeds must be analyzed as disposable income, the Trustee also relied on a series of cases which hold that exempt income may be considered when computing disposable income. See, e.g., *In re Schnabel*, 153 B.R. 809 (Bankr. N.D. Ill. 1993)(Exempt Social Security benefits and pension income are disposable income.); *Watters v. McRoberts*, 167 B.R. 146 (S.D. Ill. 1994)(Personal injury proceeds including

applied, the Trustee has not provided a cogent disposable income analysis of the personal injury proceeds.

## III. Conclusion

The Debtors failed to disclose Mrs. Walker's personal injury lawsuit in their schedules.  Even after the lawsuit was obviously disclosed to Debtors' attorneys, no effort was made to properly schedule the cause of action or claim any part of the potential proceeds as exempt.  This conduct is extremely troubling.  Although this Court is resolving the civil issues directly before it and, in the process, allowing Mrs. Walker's claim of exemption in the personal injury proceeds, nothing contained herein should be construed in any way as condoning the conduct of the Debtors or their attorneys.[5]

This Court will grant the Debtors' Motion to Modify in part

---

the exempt amount of such proceeds are disposable income.); *In re Lush*, 213 B.R. 152 (Bankr. C.D. Ill. 1997)(Exempt worker's compensation benefits are disposable income.).  All of these cases dealt with the pre-BAPCPA concept of disposable income.  Although this Court cannot say, and need not say at this juncture, that the holdings of these cases have been abrogated by the new BAPCPA definitions related to disposable income, this Court would caution against the routine citation to these cases without any explanation of why they remain good law.  It is hard to see how the potential recovery of funds through an action where both liability and damages may be disputed meets the *Hamilton v. Lanning* "known" or "virtually certain" concept of disposable income.

[5]    The conduct involved here may well be punishable criminally, but that action will come, if at all, in a different case before another court.  *See* 18 U.S.C. §152.

and deny it in part.  For the reasons set forth herein, the Debtors will be ordered to turn over to the Trustee the sum of $12,013.93. From that amount, the Trustee will be authorized and directed to pay a dividend of $10,062.54 to unsecured creditors.  Mrs. Walker will be allowed her $15,000 exemption.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###